Vacated by Supreme Court, filed January 7, 2008

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.                                                          No. 06-4522

DERRY DREW PYLES,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, Chief District Judge.
(1:05-cr-00023-IMK-AL)

Argued: December 1, 2006

Decided: April 11, 2007

Before NIEMEYER, WILLIAMS, and KING, Circuit Judges.

Vacated and remanded by published opinion. Judge Williams wrote
the opinion, in which Judge Niemeyer and Judge King joined.

## COUNSEL

**ARGUED:** Zelda Elizabeth Wesley, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Appellant. James Bryan Zimarowski, Morgantown, West Virginia, for Appellee. **ON BRIEF:** Rita R. Valdrini, Acting United States Attorney, Wheeling, West Virginia, for Appellant.

**OPINION**

WILLIAMS, Circuit Judge:

Derry Drew Pyles pleaded guilty to one count of aiding and abetting the distribution of crack cocaine, in violation of 21 U.S.C.A. § 841 (West 1999 & Supp. 2000). Although the advisory guideline range called for 63-78 months' imprisonment, the district court imposed a variance sentence of 5 years' probation with 6 months' home confinement.

The district court viewed probation as an appropriate sentence in this case because of Pyles's extraordinary rehabilitation. The Government appeals this sentence, arguing that the extent of the variance is unreasonable. While we appreciate the thoughtfulness that went into the district court's decision not to impose a sentence of imprisonment, we agree with the Government that the variance sentence of probation does not reflect the seriousness of Pyles's offense or provide a just punishment. The sentence therefore failed to satisfy adequately the sentencing factors set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2006). Accordingly, we vacate Pyles's sentence and remand for resentencing.

I.

During the late spring and early summer of 2004, the West Virginia State Police investigated crack cocaine distribution in the area of Morgantown, West Virginia. This investigation led undercover officer Sgt. Joe Adams to call Melodie Hatcher on May 27, 2004, and tell her that he wanted to purchase $100 of crack cocaine. Hatcher was part of Pyles's circle of drug-using friends, which also included Latasha Linear and Lucinda McCloy. To feed their addiction, these friends would obtain ("score") drugs for other people and would then keep ("pinch") some of the drugs as payment.

After Sgt. Adams contacted her, Hatcher called Pyles to "score" drugs for her. She then took Sgt. Adams to Pyles's residence in Morgantown, where Sgt. Adams met Pyles as Hatcher obtained the crack cocaine. While they were waiting for Hatcher, Pyles gave Sgt. Adams

his phone number so, in his words, he "could cut [Hatcher] out of the loop and . . . pinch more for [himself]." (J.A. at 102.)[1] After leaving the residence, Hatcher gave Sgt. Adams the crack cocaine minus the portion that she had "pinched" for brokering the deal. Using the phone number Pyles had provided him, Sgt. Adams twice contacted Pyles on June 12, 2004, and purchased $100 quantities of crack cocaine at Pyles's home.

On March 1, 2005, a federal grand jury in the Northern District of West Virginia returned an indictment charging Pyles with conspiracy to distribute in excess of five grams of cocaine base ("crack cocaine"), in violation of 21 U.S.C.A. §§ 846 (West 1999 & Supp. 2006) and 841(b)(1)(B)(iii), and with three counts of distributing .15, .23, and .33 grams of crack cocaine (reflecting the controlled buys by Sgt. Adams), in violation of §§ 841(a)(1), (b)(1)(C). The indictment also charged Hatcher, McCloy, and Linear with the distribution conspiracy and with substantive distribution offenses. On May 6, 2005, Pyles entered into a plea agreement with the Government and ultimately pleaded guilty to one count of aiding and abetting the distribution of .23 grams of crack cocaine, in violation of 21 U.S.C.A. § 841(a)(1), (b)(1)(C). The presentence report (PSR) determined that Pyles was responsible for a total drug relevant conduct of 26.4 grams of crack cocaine, which was calculated by adding the quantity of controlled buys by Sgt. Adams to the quantities of crack cocaine that other individuals admitted to buying from Pyles or observed him sell to others. Based on this quantity of drugs, and taking into account a three-level reduction for acceptance of responsibility, the PSR calculated a total guideline offense level of 25. Considering Pyles's various adult criminal convictions, the PSR determined that Pyles fell within a criminal history category of II.[2] Pyles did not object to the PSR's determina-

---

[1]Citations to "(J.A. at ___.)" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[2]The PSR included in Pyles's criminal history determination his two convictions for driving under the influence (DUI) and one conviction for domestic battery. Pursuant to U.S. Sentencing Guidelines Manual, § 4A1.2(c) (2004), the PSR excluded from Pyles's criminal history determination two convictions for driving while his license was revoked for DUI.

tion that he was responsible for distributing 26.4 grams of crack cocaine.

Pyles's sentencing hearing commenced on September 2, 2005. Based on the PSR, the district court determined, without objection, that the advisory guideline range was 63-78 months' imprisonment. The district court then examined the sentencing factors set forth in 18 U.S.C.A. § 3553(a). Considering "the history and characteristics of the defendant," 18 U.S.C.A. § 3553(a)(1), the court noted that it had received two letters from Pyles's employer. The first letter, sent in May 2005, described Pyles's efforts to turn his life around, by establishing a new home, paying his debts, and contacting the county sheriff to resolve a DUI charge. The second letter, sent just prior to Pyles's sentencing hearing, stated that Pyles "continued to prove himself an excellent employee" and described him as "a trustworthy individual and someone who enjoys the numerous tasks . . . put before him." (J.A. at 154.)

The district court also discussed the need for Pyles to receive drug treatment counseling. This need prompted the district court to continue Pyles's sentencing so that Pyles could work with a noted substance abuse counselor in Morgantown.

At the beginning of Pyles's resumed sentencing hearing on March 24, 2006, the district court noted that Pyles consistently met with his substance abuse counselor, who reported that Pyles "ha[d] done better than any person I am currently working with." (J.A. at 55.) Pyles's probation officer also reported to the district court that Pyles had regained his suspended driver's license and had been free from drugs and alcohol during his presentencing release.

The district court then had a colloquy with the parties about the § 3553(a) factors and whether a sentence of probation would better serve those factors than imprisonment. The Government pointed to the fact that Pyles's co-defendant, Hatcher, had been sentenced to 37 months' imprisonment and argued that there was not really any difference between Hatcher and Pyles in terms of their rehabilitation and that sentencing them differently would create a disparity. The district court rejected this argument, however, noting that "case law in the Fourth Circuit . . . says you don't compare co-defendants to determine

disparity."[3] (J.A. at 59.) On the other hand, the district court observed the seriousness of Pyles's crime and that he was the source of drugs that his co-defendants distributed to others.

In the end, however, the district court viewed Pyles's rehabilitation as the decisive factor. Based on Pyles's substantial rehabilitation, the district court imposed a variance sentence of 5 years' probation with a condition of 6 months' home confinement.

On April 24, 2006, the district court entered a Judgment in a Criminal Case and included a twenty-two page statement explaining its reasons for imposing a variance sentence of probation. The well-written statement analyzed in detail how the facts of Pyles's case comported with the sentencing factors of § 3553(a). Starting with the factor of § 3553(a)(1), "the nature and circumstances of the offense and the history and characteristics of the defendant," the district court stated that "Pyles'[s] history and characteristics were determinative. His personal rehabilitative efforts both pre- and post-conviction have been extraordinary, and beyond anything seen in other criminal cases this judge has handled during almost fourteen years of criminal sentencing under the guidelines." (J.A. at 137.) The district court observed that Pyles abruptly stopped using drugs more than six months before he was indicted and that Pyles had continued on a path of rehabilitation by proving himself to be a good employee, repaying past debts, rectifying a DUI offense, and abstaining from drugs.

The district court recognized that, while Pyles's rehabilitation was extraordinary, his drug distribution offense was serious. *See* 18 U.S.C.A. § 3553(a)(1) (requiring sentencing courts to consider the "nature and circumstances of the offense"). In fact, the district court concluded that the one count of aiding and abetting distribution to which Pyles pleaded guilty did not actually reflect the extent or seriousness of Pyles's offense. As the court explained, "Pyles' offense was part of a quintessential crack case involving a significant amount

---

[3]The district court did not cite a particular case, but it could have been referring to *United States v. Ellis*, 975 F.2d 1061 (4th Cir. 1992), in which we held that, absent proof of prosecutorial misconduct, "a district court may not depart downward based upon the disparity of sentences among co-defendants." *Id.* at 1066.

of a dangerous drug, multiple sales, and numerous people." (J.A. at 145.)

With these facts in mind, the district court then proceeded to consider the need for Pyles's sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C.A. § 3553(a)(2). The district court concluded that "a sentence of probation will allow Pyles to complete valuable vocational training and take advantage of available opportunities for advancement at work in the most effective manner." (J.A. at 146 (citing § 3553(a)(2)(D).) Because Pyles had been monitored for drug use and tested negative at every screening during the six months prior to his indictment, the district court concluded that "incarceration is not necessary to protect the public from further crimes by Pyles, (18 U.S.C. § 3553(a)(2)(C)), and a sentence of probation that includes home confinement will sufficiently restrict his freedom to deter any risk of future criminal conduct. (18 U.S.C. § 3553(a)(2)(B))." (J.A. at 147.) Although it noted that aiding and abetting the distribution of crack cocaine was a serious offense, the district court concluded that a variance sentence of 5 years' probation was sufficient, but not greater than necessary, to punish Pyles for his offense.

Finally, the district court considered whether the variance sentence would create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C.A. § 3553(a)(6). Although expressly acknowledging that Pyles's variance sentence would indeed create a sentencing disparity relative to other defendants convicted of distributing crack cocaine, the district court concluded that the disparity was warranted because of Pyles's unique rehabilitation. (J.A. at 149-50 ("[I]ncarceration [of Pyles] would be a gross mistake, a warehousing effort that would be a poor substitute for the positive rehabilitative influence Pyles has found in work, counseling, and education outside the correctional system.").)

Having determined that a variance sentence was warranted under § 3553(a), the district court analyzed whether the extent of the variance sentence was justified by comparing Pyles's case with our decision in *United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006), which vacated a variance sentence because the extent of the variance — a reduction from 360 months to 120 months' imprisonment — was unreasonable. *Id.* at 437. The district court observed that in *Moreland* the extent of the variance was unreasonable because the defendant in that case was a repeat drug offender and because the defendants's "'desultory pursuit of his education and his spotty employment history . . . can provide little confidence in his willingness to become a productive member of society, irrespective of his ability to do so.'" (J.A. at 151 (quoting *Moreland*, 437 F.3d at 437.).) By contrast, the district court concluded that Pyles was unlike the defendant in *Moreland* because Pyles was "not a repeat drug offender." (J.A. at 151.) Further, unlike the defendant in *Moreland*, Pyles not only "exhibited a willingness to become a productive member of society . . . he has achieved that goal." (J.A. at 152.) For these reasons, the district court concluded that it was reasonable to impose a variance sentence of 5 years' probation with a condition of 6 months' home confinement.

The Government appeals this variance sentence. We have jurisdiction pursuant to 18 U.S.C.A. § 3742(b) (West 2000 & Supp. 2006) (authorizing the Government to appeal sentencing decisions) and 28 U.S.C.A. § 1291 (West 2006).

II.

A.

Before the establishment of the mandatory Sentencing Guidelines by the Sentencing Reform Act (SRA) of 1984, a sentencing judge had "wide discretion to decide *whether the offender should be incarcerated* and for how long, whether he should be fined and how much, and whether some lesser restraint, such as probation, should be imposed instead of imprisonment or fine." *Mistretta v. United States*, 488 U.S. 361, 363 (1989) (emphasis added). Because the sentencing "court's determination as to what sentence was appropriate met with virtually unconditional deference on appeal," there was effectively no appellate review of the sentence imposed. *Id.* at 364.

The SRA changed this scheme. Not only did the SRA establish mandatory Sentencing Guidelines to circumscribe a sentencing judge's discretion, it established appellate review of sentences. Although the Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005), that the mandatory application of the Guidelines was inconsistent with Sixth Amendment principles, *id.* at 244, it addressed the constitutional defect by severing and excising the portion of the SRA that made the Guidelines mandatory while also maintaining appellate review. The Sentencing Guidelines are no longer mandatory, but post-*Booker* a district court still "must consult those Guidelines and take them into account when sentencing." *Id.* at 264. We in turn review the district court's sentencing decision for reasonableness, which serves "to iron out sentencing differences." *Id.* at 263.

A district court imposing a sentence in the wake of *Booker* "must engage in a multi-step process that begins with correctly determining the defendant's Guideline range." *United States v. Tucker*, 473 F.3d 556, 560 (4th Cir. 2007). The court must then "determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors."[4] *Moreland*, 437 F.3d at 432 (alterations in original) (internal quotation marks omitted).

---

[4]Under § 3553(a), a sentencing court must consider

   (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2)   the need for the sentence imposed—

      (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B)   to afford adequate deterrence to criminal conduct;

      (C)   to protect the public from further crimes of the defendant; and

      (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

   (3)   the kinds of sentences available;

Selecting a non-guideline range sentence requires two additional steps. First, the court "should . . . look to whether a departure is

---

(4)   the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i)   issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii)   that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B)   in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5)   any pertinent policy statement—

(A)   issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B)   that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of the offense.

18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2006)

appropriate based on the Guidelines Manual or relevant case law." *Id.*
"If an appropriate basis for departure exists, the district court may
depart." *Id.* Second, the court must determine whether the resulting
range serves § 3553(a)'s sentencing factors; if it does not, the court
may then elect to impose a variance sentence. *Id.* The district court
"must articulate the reasons for the sentence imposed" and provide an
explanation for the variance that is tied to the § 3553(a) sentencing
factors. *Id.*

Our review of sentences for reasonableness "involves both proce-
dural and substantive components." *Moreland*, 437 F.3d at 434. "A
sentence may be procedurally unreasonable, for example, if the dis-
trict court provides an inadequate statement of reasons or fails to
make a necessary factual finding." *Id.*; *see, e.g.*, *United States v. Dav-
enport*, 445 F.3d 366, 372 (4th Cir. 2006) (concluding that the district
court's statement of reasons for imposing a variance sentence "was
lacking in that the court did not explain how [the] variance sentence
better served the competing interests of § 3553(a) than [a] guideline
sentence would" (internal quotation marks omitted)). "A sentence
may be substantively unreasonable if the court relies on an improper
factor or rejects policies articulated by Congress or the Sentencing
Commission." *Moreland*, 437 F.3d at 434; *see United States v. Eura*,
440 F.3d 625,634 (4th Cir. 2006) (vacating a variance sentence based
on the sentencing court's rejection of the 100:1 crack/powder cocaine
sentencing ratio).

There is no contention that Pyles's sentence is procedurally unreason-
able.[5] The district court correctly determined, after making appropri-
ate findings of fact, the applicable guideline range; determined that a
sentence within the guideline range did not satisfy the § 3553(a) fac-
tors; determined that there was no basis for departure that would
result in a guideline sentence that would serve the § 3553(a) factors;
and elected to impose a variance sentence. *See Moreland*, 437 F.3d
at 432. Finally, the district court provided an extensive statement of
reasons for why a variance sentence was warranted. Indeed, the dis-

---

[5]At the time of Pyles's second sentencing hearing, the district court
had the benefit of our decisions in *United States v. Eura*, 440 F.3d 625
(4th Cir. 2006), and *United States v. Moreland*, 437 F.3d 424 (4th Cir.
2006), and did an admirable job of following their procedural directions.

trict court's statement is a model for written reasons accompanying the entry of a variance sentence. It carefully identified the competing concerns of sentencing and cogently explained why, in the district court's view, the sentence was appropriate.

The Government concedes that a variance sentence is warranted in this case, but contends that the extent of the variance sentence is substantively unreasonable. We have instructed that "[t]he farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *Id.* at 434. The Government contends that Pyles's sentence of five years' probation is an "extraordinary variance [that] is not supported by extraordinary circumstances." (Appellant's Br. at 12.) For the reasons that follow, we agree that the variance sentence imposed is unreasonable.

B.

At the outset, it will help to describe the extent of the variance sentence. We often refer to variance sentences by noting the scope of the increase or decrease and describing the fractional or percentage difference between the variance sentence and the applicable guideline range. *See, e.g.*, *Moreland*, 437 F.3d at 435 (vacating a variance sentence "two-thirds . . . less than the bottom of the advisory guideline range"); *Tucker*, 473 F.3d at 563-64 (vacating a variance sentence that was "a 114 month increase from the top of the advisory guideline range," which "represented a 480% increase"). In this case, however, describing the variance sentence in mathematical terms is not very helpful because the district court imposed *no* imprisonment when the advisory guideline range called for 63-78 months' imprisonment. Thus, the variance sentence represents a 100% decrease even though in actual months it is less than the extent of variances that other courts have concluded are reasonable.[6] *See United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006) (affirming as reasonable a variance sentence of 68 months below the advisory guideline range of 188-235

---

[6]A variance sentence will always appear to be more dramatic when the advisory guideline range is low and less dramatic when the range is high. For example, a 60 month variance from an advisory guideline sentence of 120 months would be a 50% reduction, but a 60 month variance from an advisory guideline sentence of 240 months would be a 25% reduction.

months' imprisonment); *United States v. Hewlett*, 453 F.3d 876, 881 (7th Cir. 2006) (affirming as reasonable a variance sentence of 240 months' imprisonment when the advisory guidelines called for life imprisonment); *United States v. Krutsinger*, 449 F.3d 827, 831 (8th Cir. 2006) (affirming as reasonable a variance sentence 79 months below the advisory guideline range of 100-125 months' imprisonment); *cf. Moreland*, 437 F.3d at 432 (remanding for imposition of a variance sentence no more than 120 months below the advisory guideline range).

Given the nature of the variance sentence before us, it is better to describe the variance by considering the number of guideline offense levels between the variance sentence of probation and the recommended guideline range of 63-78 months' imprisonment. *See United States v. Maloney*, 466 F.3d 663, 668 (8th Cir. 2006) ("The offense-level approach seems more in keeping with our assigned role to further the objectives of the Sentencing Reform Act, because the guideline system established by the Act was designed to adjust sentences incrementally by offense level, rather than by percentages."); *cf. United States v. Dalton*, 477 F.3d 195, 200 (4th Cir. 2007) (instructing that upward departures from Criminal History Category (CHC) VI must be made by moving down the CHC VI column "to successively increasing offense levels until an appropriate sentencing range is reached" (internal quotation marks omitted)). Here, Pyles's unchallenged guideline offense level was 25, placing him squarely in Zone D of the Sentencing Table. *See* U.S. Sentencing Guidelines Manual ch. 5, pt. A (2004). To impose a sentence of probation with a condition of 6 months' home confinement, the district court had to vary sixteen offense levels, placing Pyles in Zone B of the Sentencing Table. *See* U.S. Sentencing Guidelines Manual § 5B1.1(a)(2) (authorizing a sentence of probation when the applicable guideline range is in Zone B if the sentence includes home detention). We must consider whether a variance of sixteen offense levels is reasonable in this case.

C.

1.

The Government argues that the extent of the variance sentence is unreasonable because the district court failed to consider the need to

avoid unwanted sentencing disparities. *See* 18 U.S.C.A. § 3553(a)(6). Pointing to the fact that Pyles's co-defendant, Melodie Hatcher, had also been rehabilitated but was sentenced to 37 months' imprisonment, the Government contends that a variance sentence may be warranted but that the sentence should be 38 months' imprisonment — one more month than Ms. Hatcher — to reflect Pyles's greater culpability.

We reject the Government's argument on this point because § 3553(a)(6) is concerned with whether a particular defendant's sentence creates a sentencing disparity with all other similarly situated federal defendants. In other words, "the kind of 'disparity' with which § 3553(a)(6) is concerned is an unjustified difference across judges (or districts) rather than among defendants to a single case." *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006); *cf. United States v. Khan*, 461 F.3d 477, 500 (4th Cir 2006) (vacating a variance sentence as unreasonable because the district court "focused almost exclusively" on imposing a sentence similar to a co-defendant).

This is not to say that a district court, in imposing a variance sentence, cannot look to what variances were given co-defendants. A court may find such an approach helpful. But the extent of a variance will not be unreasonable under § 3553(a)(6) merely because it creates a disparity with a co-defendant's sentence.

2.

Other reasons, however, lead us to conclude that the extent of the variance was unreasonable. The district court imposed a punishment of probation only, rather than a variance sentence of imprisonment, because it concluded a sentence of imprisonment would be greater than necessary to comply with the sentencing purposes of 18 U.S.C.A. § 3553(a)(2). In the district court's view, "federal sentencing policy is not purely retributive. It does not mandate warehousing individuals who reclaimed their lives long before they were indicted and arrested." (J.A. at 147.) Noting all the steps that Pyles had taken to change his life and rectify past wrongs, the district court concluded that "neither the public, society nor Pyles will benefit from a sentence of incarceration." (J.A. at 148.)

We conclude that in rejecting a sentence of imprisonment, the district court failed to place sufficient weight on "the need for the sentence imposed . . . to reflect the seriousness of the offense . . . and to provide just punishment for the offense," 18 U.S.C.A. § 3553(a)(2)(A), in conjunction with "the *kinds* of sentence . . . established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines," 18 U.S.C.A. § 3553(a)(4) (emphasis added). In rejecting a sentence of imprisonment, the district rejected the Sentencing Commission's judgment that an offense of this kind — one involving crack cocaine — is a serious offense that must be punished by a meaningful sentence of imprisonment.

"Congress has made a decision to treat crack cocaine dealers more severely" than dealers of other drugs, such as powder cocaine. *Eura*, 440 F.3d at 633. To effectuate this decision, the Guidelines have established base offense levels that require imprisonment even for the smallest quantity of crack cocaine.[7] The district court did not, however, attribute to Pyles the smallest quantity of crack cocaine, and Pyles did not commit the least serious crack cocaine offense. The district court determined *without objection by Pyles* that he was responsible for 26.4 grams of crack cocaine, an amount that, if proven to a jury, carries a significant statutory penalty. In fact, if Pyles had pleaded guilty to an indictment count charging this amount, he would have been subject to a mandatory *minimum* of 5 years' imprisonment. *See* 21 U.S.C.A. § 841(b)(1)(B). Further, the district court recognized

---

[7]For example, the lowest guideline base offense level available for a criminal offense involving crack cocaine is 12. *See* U.S. Sentencing Guidelines Manual § 2D1.1(c)(14) (assigning a base offense level of 12 for less than 250 milligrams of cocaine base). Even if Pyles had been attributed the smallest quantity of crack cocaine and was given a two-level reduction for acceptance of responsibility (a three-level reduction is not available for offense levels under 16), with his criminal history he would still fall within Zone C, which, under the Guidelines, does not allow for a sentence of probation. *See* U.S. Sentencing Guidelines Manual § 5B1.1 cmt. n.2 ("Where the applicable guideline range is in Zone C or D of the Sentencing Table . . . , the guidelines do not authorize a sentence of probation."). Thus, in imposing a variance of sixteen offense levels, the district court had to dip below the lowest offense level established for the least serious crack cocaine offense.

that the seriousness of Pyles's offense was not adequately reflected in the charge to which he pleaded guilty. Pyles did not only aid and abet the distribution of crack cocaine, he acted as a supplier for his co-defendants and allowed them to complete drug transactions in his home.

To be sure, the Guidelines are no longer mandatory, and we recognize that 21 U.S.C.A. § 841(b)(1)(C), the offense to which Pyles pleaded guilty, establishes a statutory sentencing range of 0-20 years' imprisonment, thereby authorizing a sentence of probation. *Booker* did not, however, return us to the pre-Guidelines world where a district court had virtually unreviewable sentencing discretion, including unreviewable discretion about whether to impose imprisonment at all. District courts must still consult the Guidelines when determining a sentence, *Booker*, 543 U.S. at 264, and our review of a sentence's reasonableness in light of the § 3553(a) factors is informed by the Guidelines because they embody many of Congress's stated objectives in § 3553(a), *United States v. Johnson*, 445 F.3d 339, 343 (4th Cir. 2006). In other words, some variance sentences, no matter how meticulously arrived at, are unreasonable by virtue of their failure to advance the purposes of sentencing stated in § 3553(a). *See United States v. Martin*, 455 F.3d 1227, 1237 (11th Cir. 2006) ("There [are] sentences outside the range of reasonableness that do not achieve the purposes of sentencing stated in § 3553(a) and that thus the district court may not impose.").

The fact that under the Guidelines the lowest base offense level for crack cocaine distribution does not authorize a sentence of probation within the range of sentences available indicates that it is a serious offense requiring a serious punishment of incarceration. In this case, which involved a not insubstantial amount of crack cocaine, the district court's imposition of a sentence of probation rather than incarceration does not "reflect[ ] . . . the offense's seriousness . . . ." *Eura*, 440 F.3d at 633.

This is not to say that a sentence of probation is per se unreasonable in crack cocaine distribution cases or that a sentence of probation can never be reasonable when the Guidelines call for imprisonment. Such a sentence may be reasonable, for example, when the quantity of crack cocaine is small, resulting in a low guideline offense level

that requires a variance of only one or two offense levels to fall within guideline Zone B. But the facts of *this* case — largely centering on Pyles's extraordinary rehabilitation — do not justify *this* variance sentence.[8] Pyles has done precisely what the law expects: he has stopped committing crimes. Although this fact may be extraordinary in that it is unusual, it does not authorize "a get-out-of-jail-free card." *Martin*, 455 F.3d at 1238. In light of the seriousness of Pyles's crack cocaine distribution offense, a sentence of probation does not comply with Congress's direction that a sentence "reflect the seriousness of the offense . . . and . . . provide just punishment for the offense." 18 U.S.C.A. § 3553(a)(2)(A).

III.

We do not question the district court's determination that Pyles's

---

[8]We note that a majority of the published opinions of our sister courts of appeals have held sentences of probation, or sentences tantamount to probation, to be unreasonable when the Guidelines have called for meaningful sentences of incarceration. *See United States v. Davis*, 458 F.3d 491, 500 (6th Cir. 2006) (vacating a sentence of 1 day imprisonment when the advisory guideline range was 30-37 months' imprisonment); *United States v. Martin*, 455 F.3d 1227, 1239 (11th Cir. 2006) (vacating a sentence of 7 days' imprisonment when the advisory guideline range was 108-135 months' imprisonment); *United States v. Crisp*, 454 F.3d 1285, 1290-91 (11th Cir. 2006) (vacating a sentence of 5 hours' imprisonment when the post-departure range was 6-12 months' imprisonment); *United States v. Robinson*, 454 F.3d 839, 843 (8th Cir. 2006) (vacating a sentence of probation when the advisory guideline range was 63-78 months' imprisonment); *United States v. Cage*, 451 F.3d 585, 596 (10th Cir. 2006) (vacating a sentence of 6 days' imprisonment when the advisory guideline range was 46-57 months' imprisonment); *United States v. Gall*, 446 F.3d 884 (8th Cir. 2006) (vacating a sentence of probation when the advisory guidelines range was 30-37 months' imprisonment); *cf. United States v. Hampton*, 441 F.3d 284 (4th Cir. 2006) (vacating a variance sentence of probation as procedurally unreasonable). *But see United States v. Wadena*, 470 F.3d 735, 739-40 (8th Cir. 2006) (affirming a variance sentence of probation when the advisory guideline range was 18-24 months' imprisonment); *United States v. Husein*, 478 F.3d 318, 340 (6th Cir. 2007) (affirming a departure sentence of 1 day imprisonment when guideline range was 37-46 months' imprisonment).

post-offense efforts to turn around his life have been extraordinary. It is unavoidable, however, that crime has consequences. Because Pyles's crack cocaine distribution offense is a serious crime that must be punished by a sentence of imprisonment, we conclude that his variance sentence of 5 years' probation is unreasonable, but that conclusion should not be taken as a statement that no variance sentence is warranted. We therefore vacate his sentence and remand for resentencing.

*VACATED AND REMANDED*