**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4146

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

v.

DARRELL E. GILLESPIE,

       Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Frank W. Volk, District Judge.  (2:13-cr-00091-4)

Argued:  January 25, 2022                 Decided:  March 8, 2022

Before WILKINSON, NIEMEYER, and HEYTENS, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Heytens joined.

**ARGUED:**  John Hampton Tinney, Jr., HENDRICKSON & LONG, PLLC, Charleston, West Virginia, for Appellant.  Monica D. Coleman, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.  **ON BRIEF:**  Lisa G. Johnston, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

WILKINSON, Circuit Judge:

A jury convicted Darrell Gillespie of various offenses stemming from a series of armed home-invasion robberies. On appeal, he challenges one of his convictions for carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) and argues that his sentence was substantively unreasonable. Gillespie rightly points out that Hobbs Act conspiracy does not constitute a crime of violence. But the district court's contrary jury instruction was not plain error because the jury's special verdict form reveals that Gillespie was convicted under a *Pinkerton* theory of liability, which remains valid. Because he was not prejudiced by the improper jury instruction and because the district court adequately explained and justified his sentence, we affirm.

I.

A.

Darrell Gillespie and his friends Robert Barcliff, Keith Glenn, and Brandon Davis decided to steal guns, drugs, and money from drug dealers because they were less likely to report the crimes to the police. The conspirators understood they would need to use guns to successfully rob drug dealers. The robberies took place from 2011 to 2012 and stretched from Pennsylvania to Tennessee, although they were concentrated in West Virginia and Virginia.

Gillespie was present during the group's first robbery, which occurred in September 2011, and during which Barcliff used a gun to subdue the victim. The conspirators continued to engage in violent robberies throughout the winter of 2011. The robbery that underlies the § 924(c) charge at the heart of this appeal took place on December 13, 2011,

2

in Kanawha City, West Virginia. The victim, Theodore Dues, left his apartment door unlocked in anticipation of his girlfriend's return from an afternoon shopping trip. While Barcliff and Glenn normally led the robberies, Davis and Gillespie insisted on entering first to prove their mettle to the gang. Wearing masks, Gillespie and Davis burst into Dues' apartment. In the ensuing tussle, Dues was struck with the butt of a pistol. The trial witnesses (Dues, Barcliff, Davis, and Glenn) unanimously agreed that at least some of the robbers were carrying firearms but were split on whether Gillespie was personally armed during the robbery.

After hearing yelling, Barcliff and Glenn entered the apartment to find Dues held at gunpoint and cradling his 8-month-old child. While searching the residence, the robbers discovered a second child in a bedroom, whom Barcliff tried to quiet. After ransacking the apartment, the conspirators located an ounce or two of marijuana and stole several hundred dollars from Dues' wallet. Adding insult to injury, Davis told Dues to quit selling drugs with his children in the residence and not to leave his door unlocked.

After several months of additional robberies, Gillespie, Glenn, and Davis were pulled over by West Virginia police on March 23, 2012. When officers searched the car, they discovered a victim's wallet, pepper spray, a mask, and several guns stolen by the gang the day before, including a fully automatic AK-47 replica.

B.

Gillespie and the other members of the gang were indicted in the Southern District of West Virginia. Gillespie and a co-defendant opted to go to trial under a fourteen-count

3

Fifth Superseding Indictment. Several other conspirators pleaded guilty and testified against Gillespie at trial.

As relevant to this appeal, Gillespie was charged with robbery affecting interstate commerce (Hobbs Act robbery) in violation of 18 U.S.C. §§ 2 and 1951; conspiracy to commit robberies affecting interstate commerce (Hobbs Act conspiracy) in violation of 18 U.S.C. § 1951; and using, carrying, or brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(l)(A), covering the use of a gun during the Dues robbery.

The indictment referenced two distinct theories of liability for the § 924(c) charge: a direct theory of liability and a vicarious *Pinkerton* theory. Under the *Pinkerton* doctrine, defendants are vicariously "liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy." *United States v. Hare*, 820 F.3d 93, 105 (4th Cir. 2016). The government's direct theory of liability was that Gillespie personally carried a gun during the Hobbs Act robbery of Theodore Dues (a crime of violence). In contrast, the government's *Pinkerton* theory was that rather than personally carrying a gun, Gillespie was vicariously liable for the act of a co-conspirator because at least one of the other robbers carried a gun during the robbery. While the *Pinkerton* theory relied on the existence of a conspiracy, the conspiracy functioned only as a means of holding Gillespie liable for his co-conspirator's use of a gun, not as a stand-alone predicate offense.

After a two-week trial, the jury was presented with instructions tracking the government's twin theories of § 924(c) liability. The instructions therefore specified that the "first basis" for liability was "the underlying charges of robbery affecting interstate

4

commerce." JA 271. When considering this first basis, the jury was instructed to acquit on this theory of § 924(c) liability if the government failed to prove "beyond a reasonable doubt that the defendant under consideration attempted, committed or aided and abetted a robbery affecting interstate commerce." JA 271. The jury rejected this first theory of § 924(c) liability, probably because the testimony of Gillespie's co-conspirators was split on whether he was personally carrying a firearm during the robbery.

The "second basis" for § 924(c) liability relied on *Pinkerton* and the "underlying charge of conspiracy to commit robberies contained in Count One." JA 272. The jury instructions proceeded to explain *Pinkerton* liability: "the illegal actions of [a conspirator] may be attributed to other individuals who are then members of the conspiracy," if committed "during the existence or life of a conspiracy" and "in order to further or somehow advance the goals or objectives of the conspiracy." JA 272. Moreover, to find Gillespie liable for a § 924(c) violation under *Pinkerton*, the jury was also required to find beyond a reasonable doubt that (1) a member of the conspiracy; (2) carried a firearm during the Hobbs Act robbery of Theodore Dues; (3) during and in furtherance of the conspiracy; and (4) while Gillespie was a member of the conspiracy. In contrast with the first theory, the jury accepted this *Pinkerton* theory of § 924(c) liability.

C.

After Gillespie's trial, he moved for acquittal on the § 924(c) conviction arguing that the district court improperly instructed that Hobbs Act conspiracy qualified as a crime

5

of violence.[*] The district court acknowledged that the jury was incorrectly instructed that Hobbs Act conspiracy qualified as a crime of violence. But the court determined that Gillespie could not establish plain error because he had not suffered prejudice from the improper instruction. Rather than being convicted based on an improper Hobbs Act conspiracy predicate, the 27-question special verdict form demonstrated that Gillespie's § 924(c) conviction rested "explicitly on the *Pinkerton* theory." JA 397. And *Pinkerton* vicarious liability for the acts of a co-conspirator remains a valid basis for conviction, provided that the co-conspirator commits a crime of violence while carrying a gun.

At Gillespie's sentencing hearing, the district court adopted the Presentence Report, which established an Offense Level of 32, a Criminal History Category of I, and a Guidelines range of 121-151 months. Gillespie sought a downward variance and argued he was receiving an unfairly longer sentence compared to his co-conspirators because he had opted to exercise his right to trial, rather than pleading guilty and cooperating with the government. The district court rejected this argument and explained that Gillespie was not similarly situated to his co-conspirators because their more lenient sentences were driven by their acceptance of responsibility under Guidelines § 3E1.1 and government motions for substantial assistance under Guidelines § 5K1.1.

---

[*] Before the district court, Gillespie also moved for acquittal on a second § 924(c) conviction based on his brandishing of a firearm during a second robbery. The district court rejected his argument because the jury found him guilty both on the *Pinkerton* theory and on the theory that he personally brandished a firearm—and both theories remain valid. Gillespie does not challenge this second § 924(c) conviction on appeal.

The district court acknowledged that the Guidelines were merely advisory and explained why the § 3553(a) factors supported the chosen sentence. In particular, the court focused on the serious nature of the offenses and emphasized that "[t]he violence used in these robberies was extensive and very serious," and that based solely on "greed," the conspirators "restrained and assaulted victims in their residences." Supp. JA 39–40. The court therefore imposed a bottom-of-the-Guidelines-range sentence of 121 months, which, combined with the § 924(c) mandatory minimum stacking provisions (resulting in an additional 60 months for carrying a gun and an additional 84 months for brandishing a gun) led to a total sentence of 265 months. Gillespie's co-defendant Jamaa Johnson received a 235-month sentence. Government cooperators Brandon Davis, Keith Glenn, and Robert Barcliff received 70-, 110-, and 192-month sentences respectively.

## II.

Gillespie's primary contention on appeal is that his § 924(c) conviction for carrying a firearm during the robbery of Theodore Dues should be reversed because the district court incorrectly instructed the jury that Hobbs Act conspiracy constituted a crime of violence. We review for plain error because Gillespie did not object to the instruction before the district court. *United States v. Ramirez-Castillo*, 748 F.3d 205, 211 (4th Cir. 2014). Establishing plain error requires a defendant to demonstrate "(1) an error was made; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 212.

Under the second factor, an error is plain if, "at the time of appellate consideration, the settled law of the Supreme Court or this circuit establishes that an error has occurred."

7

*United States v. Walker*, 934 F.3d 375, 378 (4th Cir. 2019) (quotation marks omitted). And because we held in *United States v. Simms*, 914 F.3d 229, 233–34 (4th Cir. 2019) (en banc), that Hobbs Act conspiracy does not constitute a crime of violence, the district court's contrary instruction was therefore plainly erroneous.

But for an error to prejudice a defendant sufficiently to "affect substantial rights," "[i]t must have affected the outcome of the district court proceedings." *Ramirez-Castillo*, 748 F.3d at 215 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). In the context of a § 924(c) conviction, the verdict stands even if the jury was instructed on an invalid predicate, so long as the jury relied on a valid basis for conviction. *See Hare*, 820 F.3d at 105–06; *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021) ("We reaffirm our holding in *Hare* that a § 924(c) conviction based on one valid and one invalid predicate offense remains sound.").

Under plain error review, Gillespie's claim fails because he cannot "demonstrate that the erroneous instruction given resulted in his conviction," and therefore cannot establish prejudice. *Hare*, 820 F.3d at 105. He correctly observes that a conviction for personally carrying a firearm during a Hobbs Act conspiracy is no longer valid. But this is of no moment for Gillespie because the special verdict form affirmatively demonstrates his conviction was based on a valid *Pinkerton* theory under which he is liable for his co-conspirator's use of a firearm during the Dues robbery, not a direct Hobbs Act conspiracy predicate.

8

## A.

The text of § 924(c) contains two definitions of a crime of violence: the force (or elements) clause and the residual clause. The force clause looks to whether a crime "has as an element the use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(c)(3)(A), whereas the residual clause sought to determine whether the crime involved a "substantial risk" that physical force would be used, 18 U.S.C. § 924(c)(3)(B). In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court found the residual clause definition unconstitutionally vague, leaving only the force clause. And in *United States v. Simms*, 914 F.3d at 233–34 (en banc), we concluded that Hobbs Act *conspiracy* does not constitute a crime of violence under the force clause, and therefore may not serve as a direct § 924(c) predicate. By contrast, Hobbs Act *robbery* constitutes a prototypical crime of violence under the force clause and thus continues to serve as a valid § 924(c) predicate. *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019).

Gillespie argues that because the application of *Pinkerton* relies on the existence of a conspiracy (in his case, a Hobbs Act conspiracy) and because Hobbs Act conspiracy is not a crime of violence, he was therefore convicted based on an improper § 924(c) predicate offense. But Gillespie's argument confuses Hobbs Act conspiracy as a standalone § 924(c) predicate—which was prohibited by *Davis* and *Simms*—and vicarious liability for a co-conspirator's act of carrying a gun during a crime of violence under *Pinkerton*—which remains a valid theory of § 924(c) liability.

It is well-established that defendants may be held liable for the substantive offenses of their co-conspirators. *Pinkerton v. United States*, 328 U.S. 640 (1946). *Simms* and *Davis*

9

did nothing to upset this theory of liability in the § 924(c) context. In *Pinkerton*, the Court reiterated the principle that "so long as the partnership in crime continues, the partners act for each other in carrying it forward," meaning that "an overt act of one partner may be the act of all." *Id.* at 646–47 (citing *United States v. Kissel*, 218 U.S. 601, 608 (1910)). Under the *Pinkerton* doctrine, defendants are vicariously "liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy." *Hare*, 820 F.3d at 105. "The principle underlying the *Pinkerton* doctrine is that 'conspirators are each other's agents; and a principal is bound by the acts of his agents within the scope of the agency.'" *United States v. Dinkins*, 691 F.3d 358, 384 (4th Cir. 2012) (quoting *United States v. Aramony*, 88 F.3d 1369, 1379 (4th Cir. 1996)). *Pinkerton* is merely another form of vicarious liability, akin to aiding and abetting, that apportions "criminal responsibility for the commission of substantive offenses" based on principles of "agency and causation." *United States v. Ashley*, 606 F.3d 135, 143 (2010).

*Pinkerton*'s viability as a vicarious theory of § 924(c) liability has never depended on the categorization of Hobbs Act conspiracy as a crime of violence, and Gillespie's argument otherwise is a red herring. After *Davis* and *Simms*, it is true, a defendant cannot be convicted under § 924(c) for personally carrying a gun during a Hobbs Act *conspiracy*. But if a conspirator commits a Hobbs Act *robbery* while carrying a gun, the conspirator has violated § 924(c). And under *Pinkerton*, their co-conspirators can be held vicariously liable for the § 924(c) violation so long as the robbery and use of the firearm were reasonably foreseeable to the defendant and in furtherance of a conspiracy. The defendant would still be liable even if, unlike Gillespie, the defendant was not present at the robbery

10

and never touched a gun. This remains the case after *Davis* and *Simms* because *Pinkerton*'s applicability never turned on whether the underlying conspiracy constituted a crime of violence. *Pinkerton* liability arises in a number of contexts, many of them wholly non-violent: *Pinkerton* itself involved a bootlegging conspiracy and imposed vicarious liability for "violations of the Internal Revenue Code." 328 U.S. at 641.

This court previously addressed the issue of *Pinkerton*'s continued applicability to § 924(c) charges in *United States v. Johnson*, 827 F. App'x 283 (4th Cir. 2020). Like Gillespie, the defendant in *Johnson* was convicted of Hobbs Act conspiracy, Hobbs Act robbery, and violating § 924(c) under an improper instruction that the conspiracy charge constituted a crime of violence. *Id.* at 284–85. The prosecution advanced several theories of liability, including *Pinkerton*, and the jury returned a general verdict of guilty. *Id.* at 285. The court explained that Johnson's argument "confuses the *offense* of Hobbs Act conspiracy" as a predicate offense—which *Simms* foreclosed—and vicarious *liability* for reasonably foreseeable crimes committed in furtherance of a conspiracy under *Pinkerton*— which remains valid. *Id.* at 286. Johnson therefore could not demonstrate prejudice because "the jury could have based the firearms convictions" on the still-valid *Pinkerton* theory. *Id.*; *see Hare*, 820 F.3d at 105 (requiring the defendant demonstrate "the erroneous instruction given resulted in his conviction").

In *United States v. Woods*, the Sixth Circuit addressed the same confusion between *Pinkerton* as a theory of vicarious liability and conspiracy as a predicate crime of violence and came to the same conclusion: "a theory of *Pinkerton* liability is still permissible as long as the underlying predicate offenses qualify as crimes of violence under the § 924(c)

11

elements clause." 14 F.4th 544, 552 (6th Cir. 2021). And each circuit to address the issue agrees. *See United States v. Hernandez-Roman*, 981 F.3d 138, 145 (1st Cir. 2020); *United States v. Howell*, No. 18-3216, 2021 WL 3163879, at *4 (3d Cir. July 27, 2021); *United States v. Henry*, 984 F.3d 1343, 1356–57 (9th Cir. 2021); *see also Reyes v. United States*, 998 F.3d 753, 758–59 (7th Cir. 2021) (upholding § 924(c) conviction under *Pinkerton* after *Davis*). There is thus no doubt that *Pinkerton* remains a valid theory of § 924(c) liability.

B.

It was precisely this still-valid theory of *Pinkerton* liability that the jury embraced when finding Gillespie guilty of the challenged § 924(c) conviction. Throughout the trial, the government alleged that Gillespie violated § 924(c) on two theories—first, that he had personally used a firearm during a Hobbs Act robbery; and second, that he was liable for his co-conspirator's use of a firearm during a Hobbs Act robbery under *Pinkerton*. The jury instructions and special verdict questions likewise distinguished between these twin theories of liability. The special verdict form demonstrates that the jury selected the *Pinkerton* theory, foreclosing a finding of prejudice.

The jury instructions differentiated between the "first basis" for the § 924(c) charges predicated on "the underlying charges of robbery affecting interstate commerce," JA 271, and the "second basis" for the § 924(c) charges based on *Pinkerton* liability:

> Under this second basis, a member of a conspiracy who commits another crime during the existence or life of a conspiracy and commits this other crime in order to further or somehow advance the goals or objectives of the conspiracy, may be found by you to be acting as the agent of the other members of the conspiracy. The illegal actions of this person in committing this other crime may be attributed to other individuals who are then members of the conspiracy.

12

JA 272. Nowhere did the jury instructions explaining the *Pinkerton* theory require that the jurors find Hobbs Act conspiracy to be a crime of violence. Nor did the instructions suggest that Hobbs Act conspiracy was being treated itself as a predicate offense rather than a means for imposing vicarious liability through *Pinkerton*. And the indictment identified only Hobbs Act robbery as the underlying crime of violence.

Likewise, the special verdict form made clear that the conviction was based on *Pinkerton* liability, not Hobbs Act conspiracy as a stand-alone predicate offense. The verdict form demonstrates that the jury carefully distinguished between the two theories. In Question 10, the jury rejected the theory that Gillespie personally carried a firearm during the Hobbs Act robbery of Theodore Dues. But in Question 11, the jury found Gillespie guilty of the § 924(c) charge based on vicarious *Pinkerton* liability "arising out of the acts of a co-conspirator." JA 294.

The theory foreclosed by *Simms* is one in which a defendant personally carries a firearm during a Hobbs Act conspiracy as the predicate offense. *See Howell*, 2021 WL 3163879, at *4 ("The invalid theory . . . is that he committed the § 924(c) offenses by using a gun during conspiracies to commit Hobbs Act robberies, while the valid theory [is guilt] by virtue of his association with those who used a gun during completed Hobbs Act robberies."). Question 11, which clearly referenced a *Pinkerton* theory, cannot be interpreted to reference this impermissible theory of liability because it based liability not on Gillespie's personal use of a firearm, but on the "acts of a co-conspirator." JA 294.

The evidence at trial overwhelmingly supported this *Pinkerton* theory and demonstrated that Gillespie repeatedly participated in violent armed robberies of drug

13

dealers as part of an extensive conspiracy. This evidence primarily consisted of (1) the testimony of three of the conspirators who opted to cooperate with the government, (2) the testimony of the gang's victims, (3) the discovery of stolen goods (including an AK-47 replica and a victim's wallet) and criminal paraphernalia (such as a mask and pepper spray) in the group's possession, and (4) cell phone records corroborating the conspirators' presence at the robberies. In some instances, Gillespie initiated the robberies and in others he personally carried a firearm. The testimony of cooperators Barcliff, Glenn, and Davis—the other three robbers present that night—and the victim Theodore Dues, established that Gillespie entered Dues' apartment and helped to violently subdue him. And while testimony varied on whether Gillespie personally carried a gun that night, every witness agreed that at the very least, other members of the gang were armed.

It is also perfectly clear that Gillespie knew his co-conspirators would be engaged in a violent robbery while armed with firearms. Any failure to instruct that firearm use must be reasonably foreseeable for *Pinkerton* liability to attach therefore cannot justify reversal. After all, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). First, trial testimony established it was understood by the gang that guns would be needed to successfully rob drug dealers. Second, Gillespie had personally carried a gun and witnessed gun use by his compatriots during previous robberies. And finally, all witnesses agreed that at least some members of the conspiracy were visibly carrying guns during the Dues robbery. Any instructional error on foreseeability was therefore harmless. *See United States v. Blackman*, 746 F.3d 137, 141–

42 (4th Cir. 2014) (finding foreseeability based on "pre-robbery discussions" of firearm use); *Hare*, 820 F.3d at 105.

Congress enacted § 924(c) based on its determination that the addition of a gun to an already violent crime "increases the likelihood of harm to innocent individuals and law enforcement agents." *See United States v. Grinnell*, 915 F.2d 667, 669 (11th Cir. 1990). And Gillespie's participation in the Dues robbery involved precisely the combination of violent crime and firearms that Congress sought to criminalize in § 924(c). Because the *Pinkerton* theory remains valid after *Simms* and *Davis*, and the evidence of his guilt under this theory is unassailable, Gillespie cannot establish an error affecting his substantial rights, and therefore cannot demonstrate reversible error.

## III.

Gillespie next argues that his bottom-of-the-Guidelines-range sentence was substantively unreasonable because it resulted in a longer sentence than that received by his co-conspirators who opted to plead guilty and cooperate with the government. We review sentences in two steps. First, we determine whether the district court has committed significant procedural error. *United States v. Fowler*, 948 F.3d 663, 668 (4th Cir. 2020) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007). Second, we consider whether the sentence imposed was substantively reasonable. *Id.*

A sentence is procedurally unreasonable if the district court committed a serious procedural error, such as improperly calculating the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. *Id.*

15

Gillespie does not claim that his sentence was procedurally unreasonable. A wise concession, as the district court properly calculated the Guidelines range of 121-151 months, did not treat the range as mandatory, considered the § 3553(a) factors, and explained the decision to sentence Gillespie at the bottom of the Guidelines range, rather than grant a downward variance.

Gillespie instead argues that he has been subject to an improper "trial penalty" and that his bottom-of-the-Guidelines sentence is therefore substantively unreasonable because it creates an "unwarranted sentence disparit[y]" with his co-conspirators under 18 U.S.C. § 3553(a)(6). A sentence is substantively unreasonable only where under the totality of the circumstances, the "sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010). And "any sentence that is within or below a properly calculated Guidelines range is presumptively reasonable." *United States v. Louthian*, 756 F.3d 295, 306 (4th Cir. 2014).

Gillespie's argument fails for two reasons. First, a sentence is not "unreasonable under § 3553(a)(6) merely because it creates a disparity with a co-defendant's sentence." *See United States v. Pyles*, 482 F.3d 282, 290 (4th Cir. 2007), *vacated on other grounds*, 552 U.S. 1089 (2008); *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996). Second, individuals who opt to go to trial are not similarly situated to those who plead guilty and cooperate with the government for purposes of § 3553(a)(6). *United States v. Susi*, 674 F.3d 278, 288 (4th Cir. 2012).

16

The lower sentences of some of Gillespie's co-conspirators were driven by the Sentencing Guidelines which provide offense level reductions for defendants who accept responsibility for their offenses, U.S.S.G. § 3E1.1, and downward departures for those who provide substantial assistance to the government, U.S.S.G. § 5K1.1. "[D]efendants who exercise their right to a trial have no entitlement to the same benefit." *Susi*, 674 F.3d at 287–88. We can therefore discern no abuse of discretion in the district court's conclusion that the "greed" and "extensive" violence characterizing Gillespie's offenses did not warrant a lesser sentence. Supp. JA 40.

Unlike some of his co-conspirators, Gillespie deliberately chose not to cooperate with the government or to accept responsibility for his crimes. After spurning this opportunity, Gillespie cannot now claim a benefit he deliberately rejected.

IV.

Gillespie and his co-conspirators cynically targeted drug dealers under the belief they would be less likely to reveal the gang's predations to law enforcement. Even if by their illegal conduct the dealers placed themselves in opposition to the law, the law does not deny them all protection. It is of course the function of the law to punish such dealers for their misdeeds, but it is not the prerogative of Gillespie and his co-conspirators. The evidence at trial was overwhelming that Gillespie repeatedly violated the victims' homes through a string of violent armed robberies. Sometimes he personally carried a gun and at other times his co-conspirators did so. The Supreme Court long ago affirmed the commonsense principle that those who enter criminal conspiracies bear responsibility for

17

the reasonably foreseeable actions taken by co-conspirators to advance the group's criminal aims. It was that principle that drove this case, and the judgment is in all respects

<em>AFFIRMED.</em>