<u>PUBLISHED</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4158

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

SAUL RAMIREZ-CASTILLO,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Beaufort.  Sol Blatt, Jr., Senior District Judge.  (9:11-cr-02365-SB-1)

Argued:  March 18, 2014          Decided:  April 30, 2014

Before GREGORY, WYNN, and THACKER, Circuit Judges.

Vacated and remanded by published opinion.  Judge Thacker wrote the opinion, in which Judge Gregory and Judge Wynn joined.

**ARGUED**: Cameron Jane Blazer, SAVAGE LAW FIRM, Charleston, South Carolina, for Appellant.  Robert Nicholas Bianchi, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.  **ON BRIEF**: William N. Nettles, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

THACKER, Circuit Judge:

In this appeal, we review the propriety of a prison sentence imposed subsequent to a jury trial in which the jury made two specific factual findings but never returned a guilty verdict. Saul Ramirez-Castillo ("Appellant") challenges his conviction and sentence for possession of a prohibited object by a federal inmate. On December 14, 2011, Appellant was charged in a single-count indictment with "knowingly possess[ing] prohibited objects, that is, two homemade weapons," while an inmate at a Federal Correctional Institute in Estill, South Carolina ("FCI Estill"), in violation of 18 U.S.C. §§ 1791(a)(2), (b)(3), and (c). A jury trial was held on September 25, 2012. At the conclusion of the evidence, the district court charged the jury with determining: (1) whether the first object at issue was a "weapon"; and (2) whether the second object at issue was possessed by Appellant. The jury answered "yes" to each question, but was never asked to determine whether Appellant was "guilty" or "not guilty" of the charged offense. Although the jury never returned a guilty verdict, the parties proceeded to sentencing on February 21, 2013. Appellant was sentenced to 33 months' imprisonment, to be served consecutively to his prior undischarged term of imprisonment of 66 months.

Because we conclude the district court violated Appellant's right to have a jury determine his guilt beyond a reasonable doubt, we vacate Appellant's conviction and sentence, and we remand the case to the district court.

I.

A.

On November 5, 2011, while Appellant was serving a 66-month sentence for illegal re-entry after deportation at FCI Estill, prison officials conducted two searches that gave rise to the charges in this case. The first search was a pat-down of Appellant's person, during which a prison official found an object, described as "[a] homemade shank, approximately five inches long, with a sharp point," J.A. 33 ("Exhibit 1"),[1] inside of Appellant's pocket. After discovering Exhibit 1, prison officials conducted a search of Appellant's jail cell and locker. Inside Appellant's locker, prison officials found a nine-and-a-half-inch piece of metal, sharpened to a point on one end ("Exhibit 2"). Appellant's locker also contained four pairs of shoes, as well as several of Appellant's personal items.

Appellant did not waive his right to a trial by jury, and trial commenced on September 25, 2012. Testifying in his

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

own defense, Appellant admitted to making and possessing Exhibit 1, claiming that he used it as a tool to alter or fix ill-fitting shoes. Further, Appellant identified several pairs of shoes that were recovered from his locker and stated that he had either sewn patches or attached new soles to those shoes. Appellant also testified that he never used Exhibit 1 as a weapon and that he never planned to use it as a weapon. On cross-examination, however, Appellant acknowledged that if he were attacked and his life was in danger, he would use Exhibit 1 to defend himself against such an attack. With respect to Exhibit 2, Appellant acknowledged that, based on its appearance, Exhibit 2 could seriously hurt someone. However, Appellant testified that he had never seen Exhibit 2 before the search nor had he used it for any reason. On cross-examination, Appellant also stated that his locker had a combination lock on it, that no one else had the combination, and that he was the only one who had access to the locker.

B.

Several times during the trial, Appellant's counsel and Government counsel discussed possible jury instructions and verdict forms with the district court. Just before the close of the Government's case, Appellant's counsel summarized for the district court the issues that she believed were contested: "As to the first thing [Exhibit 1], the issue is whether the thing

4

is a weapon.  As to the second thing [Exhibit 2], the issue is whether the thing was possessed."  J.A. 73.  Thus, Appellant's counsel stated, "it may behoove us, notwithstanding the fact that they were indicted in a single count together, to prepare a special verdict form that allows the jury to walk through [the Exhibits] item by item."  Id.  Government counsel suggested preparing a verdict form that separately listed Exhibit 1 and Exhibit 2 and asked the jury to find Appellant "guilty" or "not guilty" as to each Exhibit.  Id. at 74.  The district court, however, indicated that it did not "know that that's any different from telling the jury that in order to find [Appellant] guilty, . . . they've got to find he had possession of one of these [Exhibits] that they considered to be a weapon." Id.  The district court then asked Appellant's counsel, "[d]oes that suit you . . . ?"  Id. at 75.  Appellant's counsel replied, "[t]hat would be just fine, Your Honor."  Id.

During a subsequent discussion about the verdict form, the following exchange occurred:

> THE COURT:  Ms. Blazer [Appellant's Counsel], as I understand that from [Appellant]'s, really [Appellant]'s own testimony, in so far as possession to Exhibit 1, he admits that?
>
> MS. BLAZER:  Yes.
>
> THE COURT:  And so far as the Exhibit 2, [Appellant] admits that that satisfies as a weapon?

5

MS. BLAZER:  That . . . is a reasonable conclusion for the jury to draw, yes, Your Honor.

THE COURT:  Do I -- I was thinking about charging the jury as to [Exhibit] 1 that they had to determine whether it was a weapon --

MS. BLAZER:  Yes.

THE COURT:  -- and nothing else.

MS. BLAZER:  As to Exhibit 1, yes, Your Honor.

THE COURT:  And as to [Exhibit] 2, they have to determine whether he possessed it.

MS. BLAZER:  Yes, Your Honor, I agree completely.

THE COURT:  Now, Mr. United States Attorney, you agree with this?

MR. BIANCHI [Government Counsel]:  I do, Your Honor. I think it's undisputed on Exhibit 2 at this point.

J.A. 114-15.  Appellant's counsel also noted, "just out of an abundance of caution," that "implicit in number 1 and number 2 on this verdict form is that if the answer to either number 1 or number 2 is yes, then the jury would be finding [Appellant] guilty," but that "[i]f the answer to both is no, the jury must find him not guilty."  Id. at 115.  The district court agreed that if the jury answered "no" to both questions, the court would find, "as a matter of law," that Appellant was not guilty. See id. at 115-16.  Appellant's counsel agreed, describing the verdict form as the jury's "verdict as a finding of fact."  Id. at 116.  Despite this "implicit" understanding by the district court and the parties, nowhere did the proposed verdict form

6

require the jury to determine whether Appellant was "guilty" or "not guilty." At the conclusion of this exchange, Government counsel acknowledged that he was satisfied with a verdict form of this nature.

Ultimately, the district court drafted a verdict form that posed only the following two questions:

> (1) Do you, the jury, unanimously find that Government's Exhibit One is a weapon?
>
> (2) Do you, the jury, unanimously find that [Appellant] possessed Government's Exhibit Two?

J.A. 136. In its oral jury instructions, the district court explained that for Appellant to be found guilty, the jury was required to find the following elements beyond a reasonable doubt:

> First, that [Appellant] was an inmate of the federal correctional facility.
>
> Two, that [Appellant] possessed the prohibited object, specifically a weapon.
>
> Three, that he did so without the knowledge and consent of the warden or superintendent of the facility.
>
> And four, that he did so knowingly and willfully.

Id. at 122-23.

The district court then proceeded to explain the verdict form to the jury. The court began by noting that the parties had agreed Appellant possessed Exhibit 1, so the "issue as to Exhibit Number 1 is whether it's a weapon as I've defined

7

a weapon." J.A. 127. The district court continued, "the issue . . . as to Exhibit Number 2, is did [Appellant] possess that. Everyone agreed that that's a weapon." Id.[2] After the court finished its instructions, the jury began deliberating.

Later that day, the jury reached a decision regarding the two questions asked of it, which was read in open court. As to the first question on the verdict form, the jury answered "yes," unanimously finding that Exhibit 1 was a weapon. As to the second question, the jury also answered "yes," unanimously finding that Appellant possessed Exhibit 2. The district court then thanked the jury for its service, and the jury was excused without making any other findings.

## C.

Appellant's Presentence Report calculated his total offense level at 13, pursuant to United States Sentencing Guideline § 2P1.2(a)(2). In addition, 14 criminal history points placed Appellant in criminal history category VI. Based on a total offense level of 13 and a criminal history category of VI, the Sentencing Guideline range for imprisonment was 33 to 41 months, consecutive to any other term. On February 21, 2013,

---

[2] As part of its presentation of evidence at trial, the Government did not provide the jury with any formal stipulations concerning the facts that the district court described as "agreed" upon by the parties.

after holding a sentencing hearing, the district court imposed a sentence of 33 months' imprisonment, to be served consecutively to Appellant's sentence for illegal reentry. On February 25, 2013, the district court issued a judgment order, which indicated that Appellant was "adjudicated guilty" of possessing contraband in prison, in violation of 18 U.S.C. §§ 1791(a)(2), (b)(3), and (c). J.A. 158. Appellant timely appealed from this judgment order. We possess jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II.

Appellant raises a number of challenges to his conviction and sentence. Because it will be dispositive of this appeal, we address only the propriety of Appellant's prison sentence imposed by the district court after a jury simply made two factual findings but did not return a general verdict of "guilty" or "not guilty."

Before proceeding to the merits of this issue, however, we must determine the applicable standard of review. Appellant acknowledges that his trial counsel did not raise an objection to the special verdict form as drafted by the district court and, therefore, asserts that our review should be for plain error. The Government, however, contends that if the district court's use of the special verdict form was erroneous,

9

any error was invited by Appellant and is thus unreviewable on appeal.

Pursuant to the "invited error" doctrine, "'a court can not be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request.'" United States v. Herrera, 23 F.3d 74, 75 (4th Cir. 1994) (quoting Shields v. United States, 273 U.S. 583, 586 (1927)). However, where an appellant simply fails to raise an objection on a particular issue that is before the district court, our review is for "plain error." See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993).

Based on our review of the record, we conclude that Appellant did not invite any alleged error below. While it is true that Appellant's counsel first proposed utilizing a special verdict form in this case, it was the district court that rejected Government counsel's additional suggestion that the verdict form should ask the jury for a "guilty" or "not guilty" finding as to Exhibit 1 and Exhibit 2. The district court drafted the questions that eventually went to the jury, and both parties accepted those questions without objection. Therefore, this is a case in which an unpreserved error is being raised for the first time on appeal, and we review the issue for plain error.

III.

Our authority to review errors not brought to the attention of the district court is derived from Federal Rule of Criminal Procedure 52(b), which provides, "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). Pursuant to Rule 52(b), we may correct a forfeited error only if an error was made, the error is plain, and the error affects substantial rights. See Henderson v. United States, 133 S. Ct. 1121, 1126 (2013); United States v. Olano, 507 U.S. 725, 732 (1993). Because "Rule 52(b) is permissive, not mandatory," Olano, 507 U.S. at 735, even after the above three-part showing has been made, the decision to correct the error remains within our discretion, see United States v. Carthorne, 726 F.3d 503, 510 (4th Cir. 2013). The Supreme Court has explained that the standard guiding the exercise of an appellate court's remedial discretion is whether "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Olano, 507 U.S. at 736 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936) (alteration in original)).

Accordingly, we will correct an unpreserved error if (1) an error was made; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial

11

proceedings.  See Henderson, 133 S. Ct. at 1126-27.  With this standard in mind, we turn to the instant case.

A.

We begin our plain error analysis by considering whether the district court erred when it failed to require the jury in Appellant's trial to return a general verdict of "guilty" or "not guilty" and instead presented the jury with a special verdict form that merely asked for two factual findings.

The Due Process Clause of the Fifth Amendment and the jury trial guarantee of the Sixth Amendment "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt."  United States v. Gaudin, 515 U.S. 506, 509-10 (1995).  The right to a trial by jury "includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.'"  Sullivan v. Louisiana, 508 U.S. 275, 277 (1993) (citing Sparf v. United States, 156 U.S. 51, 105–06 (1895); see also United States v. Muse, 83 F.3d 672, 679 (4th Cir. 1996) (explaining that it is a "fundamental principle that if a defendant avails himself of his Sixth Amendment right to trial by jury, only the jury can reach the requisite finding of 'guilty'" (internal quotation marks omitted)).  When a defendant has not knowingly, voluntarily, and intelligently waived his or

12

her right to a trial by jury, see Fed. R. Crim. P. 23(a); United States v. Boynes, 515 F.3d 284, 287 (4th Cir. 2008), a court may not enter a judgment of conviction "no matter how overwhelming the evidence," Sullivan, 508 U.S. at 277; see also United States v. Martin Linen Supply Co., 430 U.S. 564, 572-73 (1977).

As the Supreme Court has noted, "[t]he right to have a jury make the ultimate determination of guilt has an impressive pedigree." Gaudin, 515 U.S. at 510. The jury trial guarantee embodied in the Sixth Amendment "reflect[s] a fundamental decision about the exercise of official power -- a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges." Duncan v. Louisiana, 391 U.S. 145, 156 (1968). In addition to the jury trial's historical underpinnings, "[t]he more modern authorities . . . also confirm[] that the jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." Gaudin, 515 U.S. at 514 (internal citations omitted).

The case law in this circuit is consistent with these authorities. As we have recognized, after a trial judge has instructed the jury on the applicable law, "the next two steps are strictly for the jury: (1) determining the facts as to each element of the crime, and (2) applying the law as instructed by the judge to those facts." United States v. Johnson, 71 F.3d

13

139, 142 (4th Cir. 1995). It is, therefore, an "error of constitutional magnitude" for the trial judge to "instruct[] the jury as a matter of law that a fact essential to conviction has been established by the evidence, thus depriving the jury of the opportunity to make this finding." Id. (internal quotations omitted); see also United States v. Jinwright, 683 F.3d 471, 479 (4th Cir. 2012) (explaining that "[a] court runs afoul of [the Fifth and Sixth Amendments'] protection when it issues an instruction that relieves the government of its burden of proof with respect to an element of a charged offense").

In the instant case, we do not hesitate to conclude that Appellant's right to have a jury determine his guilt beyond a reasonable doubt was violated. Appellant was charged pursuant to 18 U.S.C. § 1791, which makes it crime for an inmate of a federal prison to knowingly "make[], possess[], or obtain[], or attempt[] to make or obtain, a prohibited object." 18 U.S.C. § 1791(a)(2); United States v. Mobley, 687 F.3d 625, 631 (4th Cir. 2012) (explaining that "a conviction under § 1791(a)(2) requires proof that the inmate knowingly possessed the prohibited object" (emphasis in original)). A prohibited objected is, among other things, "a weapon (other than a firearm or destructive device) . . . ." Id. § 1791(d)(1)(B).

Instead of asking the jury to determine whether Appellant was guilty, beyond a reasonable doubt, of each element

14

of the charged offense, the district court instructed the members of the jury that they need not concern themselves with certain elements of the crime. With respect to Exhibit 1, the court instructed the jury that the parties had agreed that Appellant possessed the object in question, so "the issue as to Exhibit Number 1 is whether it's a weapon as I've defined a weapon." J.A. 127. The district court continued, stating that "the issue . . . as to Exhibit Number 2, is did [Appellant] possess that. Everyone agreed that that's a weapon." Id.[3] In giving these instructions, the district court invaded the jury's province by declaring that certain facts essential to conviction had been conclusively established. See Johnson, 71 F.3d at 142; Muse, 83 F.3d at 680 ("A court may not by-pass the jury and enter its own finding that the element has been established.").

What is even more troubling is that the jury never actually returned a guilty verdict. In fact, it was never given the opportunity to do so. To be sure, the district court presented the jury with a special verdict form containing only the following questions: "(1) Do you, the jury, unanimously find that Government's Exhibit One is a weapon?"; and "(2) Do you,

---

[3] Notably, although the district court told the jury that the parties had "agreed" that certain facts were established, at no point during the presentation of the evidence did the Government provide the jury with any stipulations as to the existence of these facts in order to meet its burden of proof.

15

the jury, unanimously find that [Appellant] possessed Government's Exhibit Two?" J.A. 136. The jury simply answered "yes" to each question, thereby making two discrete factual determinations. Appellant's counsel even referred to the verdict form as the jury's "verdict as a finding of fact." Id. at 116.[4] The jury neither determined whether the remaining facts essential to conviction were established beyond a reasonable doubt, nor did it find Appellant guilty of the charged offense.[5]

As we have explained, "the jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." Gaudin, 515 U.S. at 514 (internal

---

[4] Even during oral argument, Appellant's counsel did not seem to fully appreciate the constitutional magnitude of the situation. Indeed, when the panel asked Appellant's counsel whether the jury's answers to the questions presented on the verdict form were indicative of Appellant's guilt or innocence, Appellant's counsel replied, "The answering of those questions clearly indicates . . . that the jury found facts . . . that the judge could use to make a finding of law as to guilt." See Oral Argument at 02:09–02:33, United States v. Ramirez-Castillo, No. 13-4158 (Mar. 18, 2014), available at http://www.ca4.uscourts. gov/oral-argument/listen-to-oral-arguments.

[5] Indeed, the special verdict form did not ask the jury to consider whether Appellant possessed Exhibit 1 or Exhibit 2 knowingly, see Mobley, 687 F.3d at 631 (knowing possession required), or whether Appellant was a prisoner at the time of the alleged offense, see 18 U.S.C. § 1791(a)(2) (status as prisoner required). Even if the evidence supporting these elements is overwhelming, a court still cannot direct a verdict for the government. See Sullivan, 508 U.S. at 277.

16

citations omitted) (emphasis supplied). Here, the district court erred when it treated the jury as a mere fact finder with respect to the elements the court considered to be in dispute, and thereby prevented the jury from making the ultimate, indispensable conclusion of whether Appellant was guilty or not guilty.[6] The district court did exactly what is prohibited -- it, in essence, directed a verdict of "guilty" for the Government and proceeded to sentence Appellant to a term of incarceration. In doing so, the court violated Appellant's jury trial guarantee. Accordingly, we conclude that the district court erred.

## B.

Having determined that the district court erred, we must decide whether the error is plain. To be "plain," an error must be "clear" or "obvious," <u>Olano</u>, 507 U.S. at 734, "at the

---

[6] Although there is "a presumption against special verdicts in criminal cases," the decision "to use a special verdict form is a matter of the district court's discretion." <u>United States v. Udeozor</u>, 515 F.3d 260, 271 (4th Cir. 2008) (internal quotation marks omitted). The problem in the instant case, however, is that the question of Appellant's guilt was never presented to the jury. Indeed, had the district court asked the jury to first determine Appellant's guilt with respect to Exhibit 1 and Exhibit 2, and then provided it with a special verdict form to make certain factual findings, this might be a different case. <u>Cf.</u> <u>id.</u> at 270-71 (upholding the use of a special verdict form where the first page "asked the jury to determine [defendant's] guilt on each of the three charged counts" and "the second page asked the jury to answer 'yes' or 'no' questions regarding three special findings").

17

time of appellate consideration," Henderson, 133 S. Ct. at 1130 (internal quotation marks omitted). An error is clear or obvious "if the settled law of the Supreme Court or this circuit establishes that an error has occurred." Carthorne, 726 F.3d at 516 (internal quotation marks omitted). In light of the well-settled Supreme Court decisions described above, including Sullivan and Gaudin, which unequivocally prohibit a court from directing a verdict against a defendant and instead require a jury to make the requisite finding of "guilty" beyond a reasonable doubt, we conclude the error in this case is plain.

C.

Because the district court committed "error" and that error is "plain," we must next consider whether the error affected Appellant's substantial rights. As the Supreme Court in Olano explained, the phrase "affects substantial rights" "in most cases . . . means that the error must have been prejudicial" -- that is, "[i]t must have affected the outcome of the district court proceedings." 507 U.S. at 734. However, the Court went on to note, "[t]here may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome." Id. at 735. This language refers to "structural errors." See United States v. Marcus, 560 U.S. 258, 263 (2010); United States v. White, 405 F.3d 208, 221 (4th Cir. 2005). Although the Supreme Court has expressly reserved the

18

question of whether structural errors automatically satisfy the third prong of Olano, see Puckett v. United States, 556 U.S. 129, 140-41 (2009), we have held that such errors necessarily affect substantial rights, satisfying Olano's third prong, see United States v. David, 83 F.3d 638, 647 (4th Cir. 1996). Therefore, if the error in the instant case is structural, the third prong of Olano is satisfied.[7]

A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310 (1991). Because structural errors are "defects in the constitution of the trial mechanism," they "defy analysis by 'harmless-error' standards." Id. at 309. Indeed, such errors "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'" Neder v.

---

[7] Of course, simply because an error may be structural does not bring it outside of plain error review. See Johnson v. United States, 520 U.S. 461, 466 (1997) (rejecting the argument that a structural error is outside the scope of Federal Rule of Criminal Procedure 52(b) and noting that "the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure"); United States v. Robinson, 275 F.3d 371, 383 n.4 (4th Cir. 2001) (explaining that "it is well settled in this circuit that plain error review applies to forfeited structural errors").

19

United States, 527 U.S. 1, 8-9 (1999) (quoting Rose v. Clark, 478 U.S. 570, 577-78 (1986)).  The Supreme Court has held particular errors to be structural "only in a very limited class of cases," Johnson v. United States, 520 U.S. 461, 468 (1997), and we have cautioned that "before a court adds a new error to the list of structural errors . . . , the court must be certain that the error's presence would render every such trial unfair," Sherman v. Smith, 89 F.3d 1134, 1138 (4th Cir. 1996) (en banc) (emphasis in original).[8]

In the instant case, the district court in effect directed a guilty verdict for the Government.  We conclude that this deprivation of Appellant's right to have a jury make the requisite finding of "guilty" or "not guilty" is structural error.  Indeed, the Supreme Court has indicated that such action by a trial court would amount to structural error:

> [H]armless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury.  We have stated that a trial judge is prohibited from entering a judgment of

_____

[8] The Supreme Court has found structural error in limited circumstances.  See, e.g., Sullivan v. Louisiana, 508 U.S. 275 (1993) (erroneous reasonable-doubt instruction); Vasquez v. Hillery, 474 U.S. 254 (1986) (racial discrimination in selection of grand jury); Waller v. Georgia, 467 U.S. 39 (1984) (violation of the right to a public trial); McKaskle v. Wiggins, 465 U.S. 168 (1984) (right to self-representation at trial); Gideon v. Wainwright, 372 U.S. 335 (1963) (total deprivation of counsel); Tumey v. Ohio, 273 U.S. 510 (1927) (lack of an impartial trial judge).

conviction or directing the jury to come forward with such a verdict . . . regardless of how overwhelmingly the evidence may point in that direction.  This rule stems from the Sixth Amendment's clear command to afford jury trials in serious criminal cases.  Where that right is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; <u>the error in such a case is that the wrong entity judged the defendant guilty</u>.

<u>Rose</u>, 478 U.S. at 578 (internal citations and quotation marks omitted) (emphases supplied); <u>see also</u> <u>United States v. Kerley</u>, 838 F.2d 932, 937 (7th Cir. 1988) (citing <u>Rose</u> and explaining that "not only does the harmless-error doctrine not apply when the error consists in directing a verdict against a criminal defendant, it also does not apply when the judge directs a partial verdict against the defendant by telling the jury that one element of the crime . . . has been proved beyond a reasonable doubt, so the jury needn't worry its collective head over that one" (internal citations omitted)).

Appellant was deprived of the right to a jury verdict of guilty beyond a reasonable doubt.  This right is a "basic protectio[n] whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function." <u>Sullivan</u>, 508 U.S. at 281.  "The deprivation of that right, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'"

21

Id. at 281-82. Accordingly, the district court's error affected Appellant's substantial rights.

D.

Even though Olano's three requirements have been satisfied, we retain discretion as to whether to notice the error. See Olano, 507 U.S. at 735-36. As we have recognized, "[t]he mere fact that a forfeited error affects substantial rights does not alone warrant the exercise of our discretion, 'for otherwise the discretion afforded by Rule 52(b) would be illusory.'" United States v. Promise, 255 F.3d 150, 161 (4th Cir. 2001) (en banc) (quoting Olano, 507 U.S. at 737). Furthermore, we are "not obligated to notice even structural errors on plain error review." Id. Therefore, we will exercise our remedial discretion on plain error review only when "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 736 (internal quotation marks omitted). "Central to this inquiry is a determination of whether, based on the record in its entirety, the proceedings against the accused resulted in a fair and reliable determination of guilt." United States v. Cedelle, 89 F.3d 181, 186 (4th Cir. 1996); see also Promise, 255 F.3d at 162 ("It is appropriate to refuse to notice a plain error when evidence of guilt is overwhelming.").

In the instant case, we will exercise our discretion to notice the plain error because failure to do so would seriously affect the fairness, integrity, or public reputation of the judiciary. The Sixth Amendment's jury trial guarantee, which includes, "as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty,'" is fundamental. <u>Sullivan</u>, 508 U.S. at 277. Here, Appellant did not waive his fundamental right to a trial by jury, yet no jury has declared Appellant guilty, and he has been sentenced to 33 months' incarceration based upon a <u>judge's</u> determination of guilt. Regardless of the evidence presented against Appellant at trial -- which we acknowledge was substantial -- we cannot condone this practice. <u>See</u> <u>Cedelle</u>, 89 F.3d at 186 n.4 (recognizing that "circumstances may exist where the proceedings contain an error that seriously affects the fairness, integrity, or public reputation of the judiciary even though the record demonstrates that the defendant is guilty"). To do so would undermine the integrity and public reputation of the judiciary. Therefore, we exercise our discretion to notice the error.

IV.

In this case, we refuse to "hypothesize a guilty verdict that was never in fact rendered." <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 279 (1993). To do so would mean "that

23

the wrong entity [will have] judged [Appellant] guilty" for the second time. <u>Rose v. Clark</u>, 478 U.S. 570, 578 (1986). Accordingly, we vacate Appellant's conviction and sentence, and we remand the case to the district court.

<u>VACATED AND REMANDED</u>